IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

COURTNEY J. SAVAGE,

     Petitioner,

  vs.

ROB JEFFREYS,

     Respondent.

**4:22CV3043**

**MEMORANDUM AND ORDER**

   This matter is before the Court on Petitioner Courtney J. Savage's ("Savage" or "Petitioner") Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (the "Amended Petition"), Filing No. 3, three motions seeking discovery and/or additional documents, Filing No. 14; Filing No. 23; Filing No. 24, and a motion for status, Filing No. 25. Savage's motion for status is granted, and this Memorandum and Order serves to advise Savage of the status of this case. Upon review of the Amended Petition, the parties' briefing, and the record, the Court will deny the relief sought in the Amended Petition, will dismiss the Amended Petition with prejudice, and will deny the pending motions for discovery and/or additional documents.

## I. RELEVANT PROCEDURAL AND FACTUAL HISTORY

### A. Conviction and Sentence[1]

   Savage was arrested on February 17, 2017, and charged with possession of a controlled substance (methamphetamine) with intent to deliver, as well as being a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221. Filing No. 9-3 at 4. Following a jury trial,

---

[1] The Court draws the relevant factual background for Savage's convictions from the Nebraska Supreme Court's direct appeal opinion in *State v. Savage*, 920 N.W.2d 692 (Neb. 2018), *opinion modified on denial of reh'g*, 924 N.W.2d 64 (2019) (Filing No. 9-3). *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

Savage was convicted, found to be a habitual criminal, and sentenced to a term of not less than a mandatory minimum of 10 years' and not more than 18 years' imprisonment. Filing No. 9-16 at 2–3; Filing No. 9-17 at 4.

Savage's conviction stemmed from events occurring during the night of February 16, 2017, and the early morning hours of February 17, beginning when Lincoln Police Department officers Anthony Gratz ("Gratz") and Andrew Barksdale ("Barksdale") arrested Michael Dryden ("Dryden") for possession of methamphetamine with intent to deliver. While being interviewed at the police station, Dryden received several text messages from an individual referred to as "Pint" seeking to sell Dryden methamphetamine. Through a search of police records, Gratz and Barksdale learned that "Pint" was a nickname for Savage.

The officers obtained Dryden's permission to use his cell phone and continued to communicate with Savage, setting up a meeting to purchase methamphetamine at an agreed-upon location in Lincoln, Nebraska. After arriving at the location, the officers received a message from Savage's cell phone indicating he was at the agreed-upon location and observed a blue two-door Toyota drive by, immediately after which Dryden's cell phone received a text message stating: "Police [are] outside." Concluding Savage was in the passing Toyota, the officers followed the vehicle and initiated a traffic stop after they observed the Toyota fail to properly signal a turn. The officers made contact with the three occupants of the vehicle—Johnathon Addleman ("Addleman"), the driver; Savage, the front passenger; and Christine Tannehill ("Tannehill"), a passenger in the back seat.

While Gratz was questioning Addleman, Barksdale attempted to contact Savage in the passenger seat. However, Savage would not acknowledge Barksdale and

maintained eye contact with his cell phone.  After some time, Savage opened the door to speak with Barksdale.  At that point, Barksdale observed that Savage's zipper was undone and a part of his pants was pulled through the zipper opening.

Addleman later explained to Gratz that as the officers were pulling the Toyota over, Savage was "wrestling around in the groin area of . . . his pants" and threw a bag at Tannehill, instructing her to "put it in [her] pussy."  Tannehill was questioned by the officers, at which time she admitted to having methamphetamine on her person and turned it over to the officers.  The officers collected a total of 7.6 grams of methamphetamine from the surrendered bag, and officers also collected each person's cell phone, which were subjected to analysis and data extraction for investigative purposes.

At trial, Gratz, Barksdale, Dryden, Addleman, and Tannehill all testified as to the events of February 16 and 17, 2017.  The state district court denied Savage's motion for a directed verdict at the close of the State's evidence, as well as his renewed motion for a directed verdict at the close of all the evidence.  After deliberations, the jury found Savage guilty.  Subsequently, the state district court determined Savage was a habitual criminal and sentenced him on November 3, 2017, to 10 to 18 years' imprisonment.

## B.  Direct Appeal

Savage timely appealed his conviction and sentence and was represented on appeal by the same counsel as at trial.  Filing No. 9-1; *see also* Filing No. 3 at 13.  On appeal, Savage alleged the state district court erred in (1) overruling Savage's motion in limine; (2) overruling Savage's motion to dismiss at the close of the State's case; (3) allowing the case to go to a jury without sufficient evidence to support a verdict; (4) allowing evidence of text messages from Savage's and Dryden's cell phones over

hearsay, foundation, completeness, and best evidence objections; and (5) abusing its discretion by imposing an excessive sentence. Filing No. 9-3 at 8; Filing No. 9-6 at 6–7. On December 14, 2018, the Nebraska Supreme Court affirmed Savage's conviction and sentence. Filing No. 9-3. Savage filed a motion for rehearing. Filing No. 9-9. The Nebraska Supreme Court overruled the motion, but modified its original opinion by issuing a supplemental opinion on March 15, 2019. Filing No. 9-4.

## C. Postconviction Proceedings

Savage filed a pro se motion for postconviction relief in the state district court on March 5, 2020, which he later supplemented with additional filings (the "Postconviction Motion"). Filing No. 9-20 at 6–257. In his Postconviction Motion, Savage asserted twenty-one grounds for relief which fell into four categories: trial court error, plain error, prosecutorial misconduct, and ineffective assistance of trial and/or appellate counsel. *Id.*; *see also* Filing No. 9-5 at 9. The state district court denied Savage's Postconviction Motion without an evidentiary hearing on February 9, 2021. Filing No. 9-19.

Savage appealed and basically asserted that the district court erred in denying the claims in his Postconviction Motion without holding an evidentiary hearing. Filing No. 9-2; Filing No. 9-12; Filing No. 9-18 at 8. On January 4, 2022, the Nebraska Court of Appeals affirmed the state district court's denial of Savage's Postconviction Motion in a memorandum opinion. Filing No. 9-5. Savage filed a petition for further review as to certain claims, which the Nebraska Supreme Court denied. Filing No. 9-2 at 4; Filing No. 9-14. The mandate issued on March 24, 2022. Filing No. 9-2 at 4.

**D. Federal Habeas Petition**

Prior to the mandate issuing in his postconviction appeal, Savage filed a habeas petition in this Court on March 18, 2022. Filing No. 1. Savage later filed his Amended Petition, which is the operative petition. Filing No. 3. Savage's habeas claims were summarized by this Court in its preliminary review of the Petition as follows:

Claim One:     The state district court erred by overruling Petitioner's motion in limine regarding the use of text messages because the text messages lacked foundation, could not be authenticated, constituted hearsay, and were more prejudicial than probative.

Claim Two:     There was insufficient evidence to support a guilty verdict because there was no corroborating testimony of Petitioner's guilt as required by Neb. Rev. Stat. § 28-1439.01.

Claim Three: Petitioner's conviction was obtained as a result of prosecutorial misconduct in violation of the Fifth, Sixth, and Fourteenth Amendments because the prosecution failed to provide the original recording and/or the transcription of Michael Dryden's recorded police interview.

Claim Four:    Petitioner was denied the effective assistance of counsel at trial and on appeal in violation of the Sixth and Fourteenth Amendments because counsel failed to object to testimony regarding Michael Dryden's recorded interview where the original recording was not provided at trial.

Claim Five:    Petitioner's conviction was obtained as a result of prosecutorial misconduct in violation of the Due Process Clause of the Fifth, Sixth, and Fourteenth Amendment because the prosecution failed to disclose Michael Dryden's recorded interview and ACI probable cause report.

Claim Six:     Petitioner was denied the effective assistance of counsel at trial and on appeal in violation of the Sixth and Fourteenth Amendments because counsel failed to object to the prosecution's failure to disclose Michael Dryden's recorded interview and ACI probable cause report in violation of *Brady*.

Filing No. 6 at 1–2.

Respondent filed an answer, Filing No. 10, the state court record, Filing No. 9, and a brief in support of his answer, Filing No. 11. Savage filed a brief in response to the answer, Filing No. 13, followed shortly thereafter by a motion for discovery and for additional documents (the "Motion for Discovery"), Filing No. 14. In accordance with the Court's direction, *see* Filing No. 15, Respondent filed a reply brief and response to the Motion for Discovery on October 5, 2022. Filing No. 16. On November 13, 2023, Savage filed two essentially identical motions for additional documents which sought, just as the Motion for Discovery did, the video recording of Dryden's police interview on February 16–17, 2017. Filing No. 23; Filing No. 24. These matters are ripe for disposition.

## II. OVERVIEW OF APPLICABLE LAW

In this case, Respondent contends that all of Savage's habeas claims, except for Claim Four, are procedurally defaulted and/or not cognizable in federal habeas and Claim Four is without merit. Filing No. 11 at 11. Thus, consideration of the law of exhaustion and procedural default, the deference that is owed to the state courts when a federal court reviews a state court's factual or legal conclusions, and the standard for evaluating a claim of ineffective assistance of counsel are all relevant to resolution of the claims set forth in the Amended Petition. Accordingly, the Court elaborates upon those concepts next so that it may apply them later in a summary fashion as it reviews Savage's claims.

## A. Exhaustion and Procedural Default

As set forth in 28 U.S.C. § 2254:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

> (B)  (i)  there is an absence of available State corrective process; or
>
>  (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to either the Nebraska Supreme Court directly[2] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. See Akins v. Kenney, 410 F.3d 451, 454–55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue

---

[2] The Court notes that where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106. Here, the Nebraska Supreme Court ordered that Savage's direct appeal be moved to its docket from the Nebraska Court of Appeals docket. Filing No. 9-1 at 4.

in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n.1.

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

8

**B.  Nebraska Law Relevant to Procedural Default**

"The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 *et seq*. (Reissue [2016 & Supp. 2023]), is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights," however, "the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Sims*, 761 N.W.2d 527, 533 (Neb. 2009).   "[A]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *Id*.  Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002).  *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.").   Furthermore, in 2011, the Nebraska Legislature created a one–year time limit for filing a verified motion for postconviction relief.  *See* Neb. Rev. Stat. § 29–3001(4); *State v. Smith*, 834 N.W.2d 799, 801 (Neb. 2013).

**C.  Standard Under 28 U.S.C. § 2254(d)**

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts.  *See* 28 U.S.C. § 2254(d).  Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405–06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## D. *Strickland* Standard for Ineffective Assistance of Counsel Claims

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id*. at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id*. at 687–88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance." *Id*. at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Strickland*, 466 U.S. at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. *Id*. at 123. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id*. (internal quotation marks and citations omitted).

### III.  DISCUSSION

As explained below, the Court finds that Claims One and Two of the Amended Petition are not cognizable in federal habeas, Claim Four fails on the merits, and Claims Three, Five, and Six are procedurally defaulted.

**A. Claims One and Two are not Cognizable Federal Habeas Claims**

Respondent argues that both Claims One and Two are not cognizable in federal habeas; that is, Claims One and Two are not the type of claims upon which federal habeas relief may be granted. As the Supreme Court has explained, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Rather, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68. Thus, federal courts "do not review questions of state law in habeas proceedings," *Cole v. Hopkins*, 56 F. App'x 742, 743 (8th Cir. 2003) (unpublished) (citing *Lee v. Gammon*, 222 F.3d 441, 443 (8th Cir.2000); *Woods v. Solem*, 891 F.2d 196, 199 (8th Cir.1989)), and "[e]rrors of state law do not provide a basis for federal habeas corpus relief," *Stewart v. Nix*, 972 F.2d 967, 970 (8th Cir. 1992) (citing *Estelle v. McGuire*, *supra*).

*1. Claim One*

In Claim One of the Amended Petition, Savage asserts that the state district court erred by overruling Petitioner's motion in limine regarding the use of text messages because the text messages lacked foundation, could not be authenticated, constituted hearsay, and were more prejudicial than probative. Filing No. 3 at 5, 17. Savage raised this claim in his direct appeal, and the Nebraska Supreme Court addressed the claim, in relevant part, as follows:

> In his first assignment of error, Savage assigns that the district court erred in overruling his motion in limine to prevent the State from entering into evidence the text messages and Cellbrite extraction reports. We have held that a motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury, but is not an appealable order. The purpose of a motion in limine is to produce, when appropriate, an advance ruling on anticipated objectionable material, and the denial of the motion cannot, in and of itself, constitute reversible error.

12

Filing No. 9-3 at 8–9 (footnotes omitted).

The Court agrees with Respondent that Claim One is not cognizable in federal habeas as Savage seeks to have this Court reexamine a state-court determination on a state-law question, i.e. whether a proper ruling was made on a motion in limine premised on state evidentiary rules.  Claim One also appears to be procedurally defaulted because the Nebraska Supreme Court declined to address Savage's motion in limine claim since the state district court's ruling on the motion in limine did not present an appealable issue. *Id*.

Though the Nebraska Supreme Court declined to address the motion in limine ruling, the court did address the admissibility of the text messages since Savage objected to the evidence during trial and assigned the rulings on his objections as error on direct appeal.  *Id*. at 9–12.  To the extent Savage's Claim One could be construed as embodying the text message admissibility claims addressed by the Nebraska Supreme Court, the Court concludes that Claim One still only invites the Court to reexamine a state-court determination of state-law questions regarding the admissibility of evidence.  "Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition." *Gillespie v. Precythe*, No. 4:17-CV-00609-NCC, 2019 WL 7048973, at *3 (E.D. Mo. Dec. 23, 2019) (citing *Scott v. Jones*, 915 F.2d 1188, 1190–91 (8th Cir. 1990)).  Only where the state court's evidentiary rulings implicate federal constitutional rights is federal habeas review appropriate.  *See Evans v. Luebbers*, 371 F.3d 438, 443 (8th Cir. 2004) (citing *Estelle*, 502 U.S. at 68); *see also Dowling v. United States*, 493 U.S. 342, 352–54 (1990)

13

(noting that evidentiary issues only implicate the Due Process Clause where they threaten "fundamental conceptions of justice").

Upon review, nothing in the record or in the Nebraska Supreme Court's conclusions on direct appeal upholding the admission of the text message evidence implicates Savage's constitutional due process rights or suggests an evidentiary mistake "so egregious that [it] fatally infected the proceedings and rendered [Petitioner's] entire trial fundamentally unfair." *Gillespie*, 2019 WL 7048973, at *3 (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995)). Accordingly, the Court denies Claim One as not cognizable.

### 2. Claim Two

In his second habeas claim, Petitioner argues that there was insufficient evidence to support a guilty verdict because there was no corroborating testimony of Petitioner's guilt as required by Neb. Rev. Stat. § 28-1439.01 (Reissue 2016), which provides that "[n]o conviction for an offense punishable under any provision of the Uniform Controlled Substances Act shall be based solely upon the uncorroborated testimony of a cooperating individual." *See* Filing No. 3 at 7, 19. Again, the Court finds, based on the record, that this claim is not cognizable in federal habeas.

The Nebraska Supreme Court addressed this claim in Savage's direct appeal and ultimately determined that § 28-1439.01 was satisfied because:

> The State provided evidence of [Savage's] drug dealing in the form of both testimony and physical evidence. Though some of the testimony was elicited from two cooperating individuals, Dryden and Addleman, it cannot be said that Savage's conviction was based solely upon uncorroborated testimony of a cooperating individual. The State provided evidence of text messages that indicated that Savage was selling methamphetamine, as well as witness testimony from five other noncooperating individuals who

generally corroborated the cooperating individuals' testimony.  Savage's §
28-1439.01 argument has no merit.

Filing No. 9-3 at 14.  Clearly, the Nebraska Supreme Court's determination was based

solely on state law, and this Court cannot reexamine a state-law determination in this

federal habeas proceeding.  Claim Two is, therefore, denied as not cognizable.

## B.  Claims Three and Four: Failure to Provide Original Recording of Dryden's Interview

In Claim Three, Savage alleges violations of the Fifth, Sixth, and Fourteenth

Amendments based on the prosecutor's misconduct in failing to provide the original

recording and/or transcription of Dryden's police interview.  Filing No. 3 at 8, 21–22.

Respondent submits that Claim Three is procedurally defaulted because Savage failed to

raise it on direct appeal.  Filing No. 11 at 15.  In his brief, Savage does not dispute that

Claim Three was not raised in his direct appeal but argues that cause and prejudice exist

to excuse any default because Savage claimed in his Postconviction Motion that his

counsel was ineffective for failing to raise Claim Three in his direct appeal.  Filing No. 13

at 12–13.  In essence, the ineffective assistance of counsel claim Savage relies on as

cause to excuse the default of Claim Three is the same claim he raises in Claim Four of

the Amended Petition, i.e. that counsel was ineffective for failing to object to testimony

regarding Dryden's recorded interview where the original recording was not provided.

Upon review, however, the Court finds that Claim Three is procedurally defaulted, and,

because Claim Four fails on the merits, Savage cannot establish cause and prejudice for

this default.

1. *Claim Three*

Savage raised Claim Three as "Ground 16" of his Postconviction Motion. *Compare* Filing No. 3 at 8, 21–22 *with* Filing No. 9-20 at 247, 255. The Nebraska Court of Appeals specifically found that Savage's prosecutorial misconduct claim regarding the failure to provide the original recording of Dryden's police interview was procedurally barred because it could have been raised on direct appeal. Filing No. 9-5 at 21. Thus, Claim Three is clearly procedurally defaulted. As indicated above, Savage argues he has shown cause for the default based on his counsel's failure to object at trial and raise the claim on appeal. Savage further asserts that prejudice exists, and "it would be a fundamental miscarriage of justice if the Federal courts refused to hear this claim," because "Claim [Three] is clearly a violation of federal law and the U.S. Constitution." Filing No. 13 at 13 (spelling corrected).

While ineffective assistance of counsel may constitute "cause" in some circumstances, "[n]ot just any deficiency in counsel's performance will do." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Rather, "the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" which must be presented to the state courts. *Id*. at 451–52 (citation omitted) (emphasis in original). Thus, in order to claim that ineffective assistance of counsel is cause to excuse his procedural default of Claim Three, Savage first must have prevailed on his ineffective assistance of counsel claim in the Nebraska state courts. Because Savage's ineffective assistance of counsel claim is essentially the same as Claim Four of the Amended Petition, the Court now reviews Claim

Four in order to determine whether Savage has shown cause to excuse the procedural default of Claim Three.

2. *Claim Four*

In Claim Four, Savage alleges he received ineffective assistance of counsel at trial and on appeal because counsel failed to object to testimony regarding Dryden's interview where the original recording was not provided. Savage presented this claim through one complete round of state court review. *See* Filing No. 9-12 at 38–41; Filing No. 9-14 at 6, 11–12; Filing No. 9-20 at 256–57. The Nebraska Court of Appeals rejected this claim in Savage's postconviction appeal, reasoning as follows:

> *(vi) Failure to Object to Dryden's Recorded Interview*
>
> Savage next contends trial counsel was ineffective in failing to object to Dryden's recorded interview because the original recording was not offered or received into evidence which he contends violated the original writings rule. *See* § 27-1002.
>
> "The original writings rule applies only if the party offering the evidence is seeking to prove the contents of a writing, recording, or photograph." *State v. Savage*, 301 Neb. 873, 876, 920 N.W.2d 692, 698 (2018), modified on denial of rehearing, 302 Neb 492, 924 N.W.2d 64. In considering the application of the original writings rule, in *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001), the Nebraska Supreme Court held that questions during trial propounded to a law enforcement officer regarding statements made by the defendant during a tape-recorded custodial interrogation were admissible and the original writings rule was inapplicable given that [the] State was not obligated to prove the content of the recording as a material element of its case. The court stated:
>
>> Unless the substantive law makes the proof of the contents of the writing, recording or photograph essential, then a witness who has first-hand knowledge of an event memorialized by a writing or a scene depicted in a photograph may testify regarding the event or scene without satisfying the original writing rule. The fact that a writing, recording or photograph offers the "best evidence" available of the transaction or scene does not limit the form of the admissible evidence. R. Collin Mangrum, Mangrum on Nebraska Evidence 727 (2000).

17

261 Neb. at 390, 622 N.W.2d at 912.

Here, the testimony regarding Dryden's recorded interview was not being sought to prove the contents of any writing or recording; instead, the testimony was sought from the individuals who were present during Dryden's interview and prior statements or information were elicited from their recollection. Therefore, the original writing rule is inapplicable and trial counsel's performance in this regard was neither deficient nor did it prejudice Savage.

Filing No. 9-5 at 31–33.

Liberally construed, Savage argues the Nebraska Court of Appeals' decision on Claim Four involved an unreasonable application of clearly established federal law and was based on an unreasonable determination of the facts because the testimony regarding Dryden's interview that his counsel failed to object to violated the Sixth Amendment Confrontation Clause. Filing No. 13 at 14–17. In response, Respondent first argues that Savage's Claim Four was that his counsel was ineffective for failing to object to the testimony "where the original recording was not provided at trial," not because of any alleged Confrontation Clause violation. Filing No. 16 at 3 (citing Filing No. 6 at 2). While this Court's summary of Claim Four referenced only the lack of the original recording, Savage clearly alleged that counsel's failure to object to testimony regarding Dryden's interview also violated "his Confrontation Clause" rights. Filing No. 3 at 23. However, even if the Court assumes Savage properly exhausted this claim, *see* Filing No. 9-12 at 38–41; Filing No. 9-14 at 11, his claim fails on the merits as all of the individuals involved in Dryden's interview (Dryden, Gratz, and Barksdale) testified at trial. *See* Filing No. 9-3 at 5–7; Filing No. 9-21 at 187–231; Filing No. 9-22 at 2–329, 160–218. There is no confrontation violation under *Crawford v. Washington*, 541 U.S. 36 (2004), if the declarant testifies at trial. *See, e.g.*, *United States v. Charboneau*, 613 F.3d 860, 861 (8th

Cir. 2010) ("*Crawford* did not alter the principle that the Confrontation Clause 'is satisfied when the hearsay declarants . . . actually appear in court and testify in person.'" (quoting *United States v. Spotted War Bonnet*, 933 F.2d 1471, 1473 (8th Cir.1991), *cert. denied*, 502 U.S. 1101 (1992))).

The Court also concludes the Nebraska Court of Appeals' determination with respect to Savage's ineffective assistance claim based on the lack of the original recording was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *Cf. Danielson v. Huether*, No. 4:18-CV-04039-RAL, 2021 WL 217706, at *3 (D.S.D. Jan. 21, 2021), *aff'd*, No. 21-1556, 2022 WL 259455 (8th Cir. Jan. 28, 2022) (citing *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) (explaining that the best evidence rule has "no application at all" when a tape recording of a conversation exists but a party seeks to call a participant in or observer of the conversation to testify about the conversation). The Nebraska Court of Appeals correctly applied the *Strickland* standard to Savage's ineffective assistance of counsel claim, and the state court's determination is entitled to deference.

### 3. Conclusion on Claims Three and Four

Based on the foregoing, Claim Four fails on the merits and, thus, is insufficient cause to excuse the procedural default of Claim Three. The Court also concludes that the miscarriage of justice exception does not apply to excuse the default of Claim Three as Savage has not made any "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"

19

*Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Accordingly, Claims Three and Four are dismissed.

**C.  Claims Five and Six: Failure to Disclose Dryden's Interview**

Both Claim Five and Claim Six of the Amended Petition relate to the prosecution's alleged failure to disclose Dryden's recorded police interview and ACI probable cause report, which Savage alleges violated *Brady v. Maryland*, 373 U.S. 83 (1963). Respondent contends both of these claims are procedurally defaulted.  Filing No. 11 at 15–16.  Upon review, the Court agrees.

*1.  Claim Five*

In Claim Five, Savage alleges his conviction was obtained due to prosecutorial misconduct in violation of the Due Process Clause of the Fifth, Sixth, and Fourteenth Amendments because the prosecution failed to disclose Dryden's interview and ACI probable cause report.  Savage raised this claim as "Ground 19" of his Postconviction Motion.  *Compare* Filing No. 3 at 25–26 *with* Filing No. 9-20 at 249–51.  As with Claim Three, the Nebraska Court of Appeals held that Savage's prosecutorial misconduct claim regarding the failure to disclose Dryden's police interview and his ACI arrest reports was procedurally barred because it could have been raised on direct appeal.  Filing No. 9-5 at 21.  Savage acknowledges that Claim Five was not raised in his direct appeal but argues this failure should be excused because he claimed in his Postconviction Motion that his counsel was ineffective for failing to raise Claim Five in his direct appeal.  Filing No. 13 at 17–19.  Savage further argues that "Claim 5 is clearly a violation of federal law and the U.S. Constitution" and the Court's refusal to consider this claim "would be a fundamental miscarriage of justice."  *Id.* at 18.

20

As noted above, ineffective assistance of counsel can serve as cause to excuse a procedural default where it has been properly exhausted in the state courts as an independent constitutional claim. *See* Edwards*, 529 U.S. at 451–52.* Here, Savage's ineffective assistance of counsel claim is the same as Claim Six of the Amended Petition. *See* Filing No. 6 at 2 (summarizing Claim Six). However, a federal habeas court is barred from considering an ineffective assistance of counsel claim as cause for the procedural default of another claim when the ineffective assistance claim has itself been inexcusably procedurally defaulted. Edwards*, 529 U.S. at 451–53.* Such is the case here because, as explained below, Savage's Claim Six is also procedurally defaulted.

2. *Claim Six*

In Claim Six, Savage argues he was denied the effective assistance of counsel at trial and on appeal because counsel failed to object to the prosecution's failure to disclose Dryden's recorded interview and ACI probable cause report in violation of *Brady.* Filing No. 3 at 29–30. Savage presented this claim to the Nebraska state courts in his Postconviction Motion and the following appeal. *See* Filing No. 9-12 at 11, 46–48; Filing No. 9-14 at 7, 15–16; Filing No. 9-20 at 251–52. In addressing this claim, the Nebraska Court of Appeals first set out the relevant standard under Nebraska law for granting a postconviction evidentiary hearing:

> As to a district court's requirement to grant an evidentiary hearing, the Nebraska Supreme Court has held:
>
>> A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. A defendant is required to make specific allegations instead of mere conclusions of fact or law in order to receive an evidentiary hearing for postconviction relief. When a district court denies postconviction

relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.

*State v. Privett*, 303 Neb. 404, 408, 929 N.W.2d 505, 510 (2019).

Filing No. 9-5 at 23–24.   The court then analyzed Savage's claim pursuant to that standard as follows:

*(viii) Failure to Object to*
*Dryden's Recorded Video Interview*

Savage contends trial counsel was ineffective in failing to object to the non-disclosure of Dryden's recorded video interview on Brady grounds. Savage contends that he was "denied the right to cross-examine the video." Brief for appellant at 42.   Savage did not allege in his motion for postconviction relief how Dryden's recorded video could be considered Brady material, which requires the disclosure of exculpatory evidence, nor did he allege how the nondisclosure prejudiced him.  Having failed to plead with particularity how his counsel's failure to object to Dryden's video constituted ineffective assistance of counsel or how this alleged failure resulted in prejudice to him, this assigned error fails.

(b) Ineffective Assistance of Appellate Counsel

Savage has alleged that appellate counsel was ineffective by failing to raise on direct appeal trial counsel's failure to . . . object "to any mention" of witness Dryden's video recorded interview with law enforcement.  Brief for appellant at 6.

As we previously noted, Savage was represented by the same counsel during trial and on direct appeal.   When a defendant was represented both at trial and on direct appeal by the same lawyers, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.   *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017).   Savage's counsel, in filing Savage's direct appeal, "could not be expected to raise or address his or her own ineffectiveness." *State v. Williams*, 295 Neb. at 590, 889 N.W.2d at 114.

Since Savage was represented by the same counsel at trial and on direct appeal, this postconviction motion was Savage's first opportunity to raise his claims regarding the ineffectiveness of counsel to raise claims on direct appeal.  However, earlier in this opinion, we rejected each of Savage's claims finding that trial counsel was not ineffective in: . . . failing to object "to

22

any mention" of witness Dryden's video recorded interview with law enforcement.  It follows that appellate counsel was likewise not ineffective for failing to raise th[is] issue[] on direct appeal.

Filing No. 9-5 at 35–37.

In short, the Nebraska Court of Appeals carefully reviewed Savage's Postconviction Motion and concluded that Savage failed to sufficiently allege counsel's deficient performance and prejudice under the Nebraska pleading rules.  *See State v. Dragon*, 843 N.W.2d 618, 623 (Neb. 2014) ("If a postconviction motion alleges only conclusions of fact or law, . . . the court is not required to grant an evidentiary hearing."). Therefore, Claim Six is procedurally defaulted pursuant to an independent and adequate state procedural rule.  *See Hunt v. Houston*, 563 F.3d 695, 703 (8th Cir. 2009) ("Federal courts generally will not review claims that a state court has refused to consider because of the petitioner's failure to satisfy a state procedural requirement"); *Sing v. Frakes*, No. 8:15CV134, 2016 WL 3248244, at *5 (D. Neb. June 13, 2016) (same); *see also Ildefonso v. Gage*, No. 4:13CV3110, 2016 WL 1092468, at *9 (D. Neb. Mar. 21, 2016), *certificate of appealability denied* (Sept. 15, 2016) ("[T]he Nebraska Supreme Court's decision to refuse to consider claims that alleged only conclusions of fact or law was based on a firmly established state procedural rule[;] . . . in Nebraska, if a postconviction motion alleges only conclusions of fact or law, then the court is not required to grant an evidentiary hearing.").  The Nebraska courts would not entertain a successive postconviction motion based on this same claim, and any successive postconviction motion filed by Savage would also be barred by Nebraska's statute of limitations.  Thus, the claim is now procedurally defaulted, not merely unexhausted.  Savage has not shown,

let alone argued, cause and prejudice to excuse the default of Claim Six, nor has he demonstrated that he was actually (factually) innocent.

### 3. Conclusion on Claims Five and Six

As explained above, Claim Six is inexcusably procedurally defaulted and, thus, cannot serve as cause to excuse the procedural default of Claim Five.  The Court also concludes that the miscarriage of justice exception does not apply to excuse the default of Claim Five as Savage does not come close to demonstrating that he is actually innocent.  Accordingly, Claims Five and Six are dismissed.

## IV.  MOTIONS FOR DISCOVERY AND ADDITIONAL DOCUMENTS

Savage filed his Motion for Discovery, Filing No. 14, shortly after filing his brief in response to Respondent's answer and supporting brief.  In the Motion, Savage seeks the video recording of Dryden's interview with Officers Gratz and Barksdale on February 16–17, 2017, in order to know, inter alia, "if Dryden really gave officers probable cause to text [Savage] like witnesses proclaimed," "if witnesses lied about what was said on the recorded interview," and "if a recorded interview even exists."   Filing No. 14 at 1–2. Savage's two later-filed motions for additional documents also seek the video recording of Dryden's interview for the same reasons.  Filing No. 23; Filing No. 24.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course."  *Williams v. Steele*, 2013 WL 5838727, at *2 (E.D. Mo. Oct. 30, 2013) (citing *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)).  Rule 6 of the *Rules Governing Section 2254 Cases in the United States District Courts* provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."

Here, the Court finds Savage has not demonstrated good cause for the discovery he seeks. First, as outlined above, all of Savage's habeas claims, except for Claim Four, are procedurally defaulted and/or not cognizable in federal habeas, and Claim Four is without merit. Second, the premise for Savage's request for Dryden's recorded interview is fundamentally flawed; Savage basically seeks the recording of the interview to determine whether the recording confirms what Dryden, Gratz, and Barksdale all testified to at his trial. However, because all three witnesses testified at trial, they were subject to cross-examination by Savage's counsel, and, thus, Savage was provided the opportunity to test the veracity of their recollections and testimony of what transpired during the interview. Savage's baseless speculation that the recording of the interview, which may not even exist, may conflict with what Dryden, Gratz, and Barksdale testified to at trial does not come close to establishing good cause for the discovery he seeks. Accordingly, Savage's Motion for Discovery and motions for additional documents are denied.

## V.  CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set for in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). The Court has applied the appropriate standard and determined Savage is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1.    Petitioner's Amended Petition, Filing No. 3, is denied and dismissed with prejudice.

2.    The Court will not issue a certificate of appealability in this matter.

3.    The Court will enter a separate judgment.

4.    Petitioner's motion for status, Filing No. 25, is granted consistent with this Memorandum and Order.

5.    Petitioner's Motion for Discovery, Filing No. 14, and motions for additional documents, Filing No. 23; Filing No. 24, are denied.


Dated this 4th day of October, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge